UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD SUAREZ,

        Plaintiff,

  v.              **DECISION AND ORDER**
                     11-CV-756S
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

    1.  Plaintiff, Donald Suarez, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Suarez alleges that he has been disabled since June 1, 2005[1] and that his impairments render him unable to work. He therefore asserts that he is entitled to disability insurance benefits ("benefits") under the Act.

    2.  Suarez filed an application for benefits under Title II of the Act on August 7, 2006.[2] The Commissioner of Social Security ("Commissioner") denied Suarez's application, and as result, he requested an administrative hearing. He received that hearing before ALJ Nancy Lee Gregg on November 12, 2008; Suarez appeared with counsel and testified. His wife, Sheila Suarez, and a vocational expert, Jay Steinbrenner, also testified at the hearing. The ALJ considered the case *de novo*, and on April 28, 2009, issued a decision denying Suarez's application for benefits. Suarez filed a request for review with

---

[1] Amended from March 1, 1997.

[2] This is Suarez's second such application. Suarez first filed an application for benefits on September 9, 1998, and he was granted a period of disability beginning March 2, 1997. His period ended, however, in June of 2003. On May 5, 2005, ALJ William Straub denied his request for a continuation of benefits.

1

the Appeals Council, but the Council denied that request on May 12, 2011, prompting him to file the current civil action on September 8, 2011, challenging Defendant's final decision.[3]

3.  On May 18, 2012, the Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The Commissioner followed suit by filing his own motion for judgment on the pleadings three days later. Briefing on the motions concluded July 9, 2012, at which time this Court took the motions under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is granted and Suarez's motion is denied.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[3]The ALJ's April 28, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

> [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Suarez has not engaged in substantial gainful activity since his alleged onset date (R. 47);[4] (2) Suarez has several severe impairments, including degenerative disc disease, tears of the inferior cruciate ligament, posterior horn lateral meniscus and posterior horn medial meniscus of the left knee, degenerative changes of the left knee, migraine headaches, allergic rhinitis, and "residuals of knee surgeries" (Suarez has had surgery on both his ACLs) (id.); (3) Suarez does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) since June 1, 2005, Suarez

---

[4]Citations to the underlying administrative record are designated "R."

has not been able to perfrom his past relevant work as a firefighter; (5) Suarez retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a), (id.), and considering Suarez's age, education, work experience, and RFC, he is capable of making a successful vocational adjustment to perform other work that exists in significant numbers in the national economy (R. 55.) Ultimately, the ALJ concluded that Suarez was not under a disability as defined by the Act from June 1, 2005 through the date of her decision. (R. 56.)

10. Suarez raises two intertwined challenges to the ALJ's decision. First, Suarez argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physicians, Dr. Andrew Cappuccino and Dr. William Douglas. Relatedly, Suarez argues that, in considering the severity of his migraine headaches, the ALJ substituted her own opinion for that of the treating physicians.

11. Under the "treating physician's rule,"[5] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

12. Suarez points to the opinion of Dr. Cappuccino, Suarez's surgeon, who, in a letter addressed to Dr. Douglas, dated January 7, 2010, declared Suarez "completely and totally disabled." (R. 400.) Supporting this judgment, according to Suarez, are several reports indicating degeneration in Suarez's cervical spine. Suarez also notes that Dr.

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Cappuccino recommended a second spinal surgery (his first was in 1997) due to continuing problems at his C3-5 vertebrae. Suarez, however, remains opposed to further surgery, believing that the first provided no relief.

Dr. Douglas made a similar finding regarding disability: in January, 2007, in a form completed pursuant to Suarez's application for benefits, Dr. Douglas opined that Suarez was not capable of performing sedentary work due to "severe h/a [headaches]."

A finding by a medical source, however, that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine that the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e); see also Green-Younger, 335 F.3d at 106 ("A treating physician's statement that the claimant is disabled cannot itself be determinative") (internal citation and quotation marks omitted). Rather, to be entitled to controlling weight, the treating physicians' opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

Here, although all parties agree that Suarez has had spinal and knee injuries, and that he suffers from migraine and cervicogenic headaches, the record is inconsistent as to whether those issues preclude sedentary work. For example, in the same report that Dr. Douglas declared Suarez unable to perform sedentary work, he indicated that Suarez could occasionally lift and carry, could stand and walk less than two hours per day, and had no limitation in sitting.[6] These findings are consistent with sedentary work as defend by the Act:

> Sedentary work involves lifting no more than 10 pounds at a
> time and occasionally lifting or carrying articles like docket files,

---

[6] A 2009 report by Dr. Douglas, submitted to the Appeals Council, indicates more limited abilities. (R. 383.)

6

> ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a)

Further, consultive examiner John Schwab, D.O., described Suarez's prognosis as "fair," noting that Suarez appeared "in no acute distress," and found only mild restrictions in head movement and his ability to kneel. (R. 316.) A non-physician examiner for the Commissioner also found that Suarez could perform duties consistent with sedentary work. (R. 327.) Specifically, he found that Suarez had no limitations in pushing/pulling, that he could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours per day, and sit less than six hours per day. (Id.) The ALJ was not, therefore, required to give the opinions of Drs. Cappuccino and Douglas controlling weight.

13.  Although Suarez notes that Dr. Douglas' opinion is uncontradicted, ALJ Gregg did not disagree with Dr. Douglas' opinion that Suarez suffered from headaches; rather, she simply disagreed with his ultimate opinion regarding his ability to work. This is the ALJ's prerogative. See SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. 1996) (whether an individual is "disabled" under the Act is not a medical issue but is an administrative finding that is dispositive of a case). "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Id. While the treating physicians' opinions on this matter should not be disregarded, there is no indication that they were. Instead, ALJ Gregg considered these opinions—according them "some weight"—in conjunction with the collective evidence and made a determination that Suarez was not disabled, which she was free and required to do under the Act as the

presiding judge. See Taylor v. Barnhart, 83 Fed. App'x 347, 349 (2d Cir. 2003) (summary order) (treating physician's belief that a plaintiff is "totally disabled" is not entitled to any weight since that determination is reserved for the Commissioner).

14. While Suarez relies heavily on evidence of his disc herniations and the presence of headaches, there can be no serious dispute that there is a dearth of objective, consistent evidence that Suarez could not complete the full-range of sedentary work with these impairments in mind. Thus, Suarez's application boils down to subjective complaints of pain—pain related to his spinal and knee injuries and pain related to his headaches. The ALJ found that Suarez's impairments could reasonably be expected to cause some degree of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these impairments were not entirely credible. In this vein, contrary to Suarez's argument, (see Pl.'s Reply Br., at 6; Docket No. 17), the ALJ clearly considered the debilitating effects of Suarez's headaches. Indeed, she noted that "one of the claimant's main complaints appears to be related his headaches." (R. 53.) The ALJ was permitted, indeed required, to make the determination regarding the effects Suarez's pain had on his ability to work. See Bowen, 859 F.2d 255 at 260 ("As fact-finder, an ALJ is free to accept or reject testimony.") And this Court finds no error therein, as it is not inconsistent with the record.

For example, although Suarez contends that he is unable to perform even sedentary work, physical therapy notes from March 16, 2006 indicate that he was able to ride a stationary bike at the gym for five miles per day. (R. 283.) In fact, those notes indicate that he was able to perform a wide range of physical activities, including squatting and hamstring curls. (R. 283-285.) In addition, this Court notes, as did the ALJ, that Dr. Michael Battaglia, a neurologist, opined that his more frequent, daily headaches were

8

associated with analgesic abuse, and thus may be reduced with more appropriate medication. (R. 311)

ALJ Gregg properly credited Suarez's testimony to the extent that he suffers from a certain degree of pain due to his various impairments, and, based on evidence such as that described above, she also made a reasonable determination that the pain should not preclude him from performing sedentary work.

15. Accordingly, having found that ALJ Gregg's opinion to be supported by substantial evidence, Suarez's motion for judgment on the pleadings is denied and the Commissioner's motion is granted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: August 5, 2012
       Buffalo, New York

      /s/William M. Skretny
      WILLIAM M. SKRETNY
      Chief Judge
      United States District Court